## INNIS GARDEN GOLF CLUB, INC.
*vs.*
## H. CORDELIA LOCKWOOD

Superior Court        Fairfield County        File No. 63624

MEMORANDUM FILED JULY 29, 1942.

*J. B. Kuriansky,* of Stamford, for the Plaintiff.

*Cressy, Bartram, Melvin & Sherwood,* of Stamford, for the Defendant.

Memorandum of decision in action for money had and received.

BOOTH, J. This is an equitable action for money. had and received by the defendant from the plaintiff, which money is alleged to have been paid through a mistake on the part of the plaintiff. The defendant, by her answer, denies that the money in question was paid by mistake, and affirmatively alleges laches and estoppel on the part of the plaintiff. In addition, she alleges that a portion of the plaintiff's claim is barred by the Statute of Limitations. Further, the defendant, by way of cross complaint, sets forth a claim of unpaid rent and sewer taxes against the plaintiff. The plaintiff denies all of the affirmative allegations of the defendant as set forth in her answer and cross complaint, and, in addition, pleads accord and satisfaction and tender, to the defendant's claim for unpaid rent. This latter affirmative pleading is denied by the defendant, and thus, upon the pleadings, the parties are at issue.

The evidence disclosed that, on May 1, 1924, the plaintiff, whose name at the time was The Sound Beach Golf and Country Club, leased for golf and country club purposes, from the defendant, for a period of 28 years, a certain tract of land located in the Town of Greenwich. The property in question contains 8.59 acres, and was part of a ten-acre tract owned by the defendant. A portion of the defendant's entire tract abutted a highway known as Lockwood Avenue, but the portion leased to the plaintiff consisted solely of so-called rear land, none of which abutted any highway. Under the terms of the lease, the plaintiff was to pay the defendant, in quarterly payments in advance, an annual rental of $500 during the first five-year period, and annual rentals for subsequent five-year periods increased by the sum of $250 for each succeeding period. In addition, the plaintiff was to pay

"all taxes that may be assessed against the property during the term of this lease, turning the receipts when paid over to the party of the first part, her heirs or assigns." This latter provision obviously required the plaintiff to make these payments to the taxing authorities of the Town of Greenwich.

From the very beginning of the plaintiff's tenancy, however, the parties, by mutual consent, modified this provision to the extent of allowing the defendant to make the tax payments for her entire ten acres and to bill the plaintiff for the proportion which she estimated the property leased bore to the entire tract owned by her. In any event, from 1924 down to the date of the present suit, the defendant, in whose name the entire ten acres of land was assessed, estimated the proportion of tax which the leased property bore to the entire ten acres, billed this amount to the plaintiff, who in turn paid the same to the defendant. The method of the defendant in arriving at the above estimate was to divide the total tax by the number of acres in the entire tract and multiply this figure by the number of acres which she estimated was covered by the plaintiff's lease. At the time of the execution of the lease the entire ten acres of the defendant's land was assessed for tax purposes upon an acreage basis only. In 1930, however, the Town of Greenwich changed its method of taxation and assessed upon a front foot basis to a depth of 150 feet all property which faced upon highways. This change increased, for tax purposes, the value of the defendant's ten-acre tract from $10,000 to $30,000, the greater proportion of which increase was due to the value placed upon the property of the defendant which was not covered by the lease in question. Notwithstanding this change in the method of assessment, with which the officers of the plaintiff were familiar, no protest was made to the defendant concerning her method of computing its share of the tax obligations until about a month prior to the bringing of this suit in 1941. In addition thereto, about the year 1933, the plaintiff commenced negotiations with the defendant to obtain a reduction in the rent provided for by the lease. A reduction was consented to by the defendant at that time and renewed requests by the plaintiff thereafter for further reductions were agreed to by the defendant on practically the plaintiff's own terms. During this period the plaintiff and the defendant continued to place a practical interpretation upon the lease, supporting the defendant's consistently followed method of computing

the tax portion due from the plaintiff. Indeed, in some of the negotiations, the payment of this large proportion of the taxes was urged upon the defendant by the plaintiff as a reason for the concessions which she subsequently made.

It must be found from the evidence that the defendant relied on the plaintiff's acceptance of this arrangement in reducing the rent, which finally was fixed by the acquiescence of the parties at $37.50 per month, beginning May 1, 1937, and continued through payments and acceptance of such monthly sums up to the commencing of this action. It is concluded that the parties practically construed the written instrument in controversy and by their conduct impliedly agreed to the tax payments as made. In addition thereto, the defendant changed her position in reference to her rent claim to such an extent that equity will not permit the recovery from her of the tax payments made under the circumstances disclosed. The parties had equal means of knowledge of the extent of their respective obligations, and monies paid by one to the other in part performance of the contract, in response to a claim made in good faith, may not be recovered except where the plaintiff establishes by clear and convincing evidence, not only the mistake but the absence of any countervailing equity in the position of the defendant. In the present case, the plaintiff has failed to establish clearly a mistake of law or fact, and indeed the court feels convinced from the evidence that the plaintiff acted with actual or constructive knowledge of the true situation concerning the division of assessment values applied to the defendant's land.

For the foregoing reasons, therefore, the defendant is under no obligation to repay any so-called over-tax payments to the plaintiff.

On the other hand, the defendant's cross complaint is equally without merit, for the reason that she had effectively modified the plaintiff's rent obligation during the period in dispute and up to the commencement of this action. What the situation may be from the refusal on her part to accept rents tendered to her in October, 1941, to the present time, is not before the court on the pleadings. So far as appears, she has received what she has agreed to take by way of rent. In so far as her claims on the sewer tax and sewer maintenance tax are concerned, the evidence does not convince the court that this tax was assessed against the leased property or that it

was such a tax as was within the contemplation of the parties. The defendant has therefore failed to establish any claim for relief under her cross complaint.

In view of the foregoing and all of the evidence in the case, judgment may be rendered for the defendant upon the issues of the complaint, and for the plaintiff upon the issues of the cross complaint, and that the defendant recover of the plaintiff her costs.